Mr. Milton, good afternoon. Good afternoon, and may it please the court. My name is David Milton and I represent the plaintiff appellant Jenna Zingg. This court should vacate the entry of summary judgment by the district court because the district court failed to fact-finding. Viewing the record in plaintiff's favor, a jury could find that Dr. Groblewski denied Ms. Zingg any appropriate treatment for her serious medical needs, which included severe psoriasis covering 90% of her inner thighs, periorectal area, and genitals. As a result, she suffered 24 days of pain, itching, and mental anguish until she was finally hospitalized as an inpatient where she received appropriate treatment. Well, the problem is, you have to establish deliberate indifference. That's a standard, not medical malpractice. Correct. And I believe there's a lot of evidence that this wasn't simply a bad call or an inadvertent failure to provide appropriate treatment, an outright denial of any appropriate treatment, starting with the fact that, as our expert Dr. Marola explains, Dovonex was a weaker topical cream than the most potent topical cream which Ms. Zingg had been treated with for several months and that had failed utterly. She had originally used the two together at one point. At some point, well before she was admitted. Can you tell from the record whether when it was prescribed here, the weaker one, whether the idea was that it was to be prescribed alone or together? The district court assumed, viewing the record in Plain's favor, the idea is that they were that they were, pardon the strangeness, the idea was that they would be, I think the record is not clear, but what's important is that Let's say the record was, just to work it through, if the record was clear that he was prescribing them to be used together, would you be able to show deliberate indifference? Absolutely. At that point when Dr. Kowalewski intervened in Ms. Zingg's care, clobazol, which is the most potent topical medication, had failed utterly and adding a weaker treatment to that was bound to fail as well. And that's a medical, that's medical evidence. Is there any evidence that it would have been clear to him that using the two together would have amounted to no treatment? Given that she had, is there a medical expert testifying that using the two together is of no use? There's medical expert testimony that adding, whether or not it's added or alone, Is there testimony to that effect? There's testimony that even adding it is of no possible help? And that it's clear that that's the case? I get that there's an inference to draw that if the stronger one doesn't work, there's no reason to think the weaker one would. And that testimony is crystal clear from what I'm hearing. Is there also evidence that using the two together could not possibly, and it would be known to any medical professional, could not possibly have any beneficial impact? It's certainly implicit in Dr. Morales' opinion that the treatment, Dovidex, without escalating treatment to a systemic treatment, was bound to fail. And, I mean, he was certainly aware, you know, of the facts facing Dr. Rablusey. And Dr. Morales said that any physician, or doctor of specialty, faced with the information in the non-formulae request for Humira and the separate request for Dovidex would know that she required an escalated level of treatment and the topical treatments were no longer going to be effective. So it's not as if the Dovidex, there's no evidence that it's going to, you know, resurrect or somehow, you know, cause the clobazosol to be effective. The point is that topical creams had been shown to fail. Go ahead. I have a question, but I have to think about it. Dr. Rablusey knew from the information alone in the non-formulae requests that Ms. Zing had been treated with moderate, that she had a history of moderate to severe psoriasis and that she had been taking Humira in the community. And as everyone agrees, Humira is not prescribed lightly. And implicit in that is that, you know, she has a very serious condition that would require systemic treatment, which is reinforced by the fact that the clobazosol had failed and she now had increasing psoriasis and joint pain, which can't be treated at all with a topical medication. So there's this protocol that you're supposed to do two things prior to a prescription? That is the... What is the content of the protocol? The content of the protocol is that there is a, whether there's one cream and then another failed cream and then you move to a systemic treatment. And is there anything in the record that indicates whether that protocol applies even to a patient who has known to have been prescribed the ultimate remedy that you get to after you do the two creams? You see what I'm saying? In other words, you're saying Dr. Rablusey would have known that she had already been prescribed Humira? Yes, that was in the former request. So does the protocol apply even to patients who is known to have been prescribed the ultimate end of the prescribed Humira? It shouldn't. I mean, there needs to be an individual determination about whether or not the protocol... It's just on its face, does it? On its face... I'm trying to figure out whether the protocol even actually... No, there's nothing in the protocol that says regardless of the severity of your condition and regardless of what you're on when you enter Framingham, you have to go back to Step 1 and retry failed creams. And Dr. Mohler, our expert, makes that very clear and it's somewhat obvious that it's inconsistent with basic medical practice and even private insurance companies don't make you sort of go back to square one. So just looking at the record, what do we have in your view that we can rely on to reconstruct what Dr. Rablusey's thought process would have been in prescribing the treatment course that he did? Does he say he was following the protocol? After the fact, there is zero contemporaneous evidence... After the fact, what do we... Zero, all we know is what he did in the moment. And then after the fact, what do we have about what he represents as why he did it? Well, after the fact, he claims that... Back to the issue of whether they were alone or together. After the fact, he claims that he was following the protocol, but he wasn't, given that she had already... He didn't know or bother to learn that she had already tried Dovonex and failed. So even according to the protocol's own terms, she was ready to escalate to systemic treatment and also, I should note that the non-former request for Dovonex stated at the end that Dovonex was indicated pending Humira approval and the end of the Humira non-former request stated the patient needs to resume Humira. So the idea that the district court... The assumption that somehow Dovonex was either an alternative to Humira or that it was meant to be added to Cloveasol and that systemic treatment was just an option down the road is not supported, certainly when you look at the record favorably of Plaintiff. Isn't there something in the record that the protocol is impacted by the change in the environmental setting? In other words, because she's now incarcerated, that it meant that there was no drug or alcohol and that she was getting other kinds of better diet, better nutrition, and that therefore it was reasonable to think that maybe the lesser medications would succeed in that environment? Whether or not that may have been true at the first instance when she entered is perhaps debatable, but by the time that she, July 15th, when she had been treated by PA Casella for several months with the most potent cream and it failed, it was no longer reasonable to think that specifically since because those months she hadn't been drinking or doing alcohol or whatever these supposed environmental factors that would have made it less effective on the outside. What is the specific evidence in the record of deliberate indifference? Well, one, I think you can look at the substance of the opinion itself. And we discussed that. And then in terms of his subject, in terms of deliberate indifference, you can look at his absence of any medical judgment when he made this decision. The only notation is that it was denied per Dr. G. He overruled the decision of her treating provider that she needed humeric without seeing the patient, without looking at any medical records, without learning her medical history or engaging in any medically acceptable decision-making process at all. And then you can also couple that with the strong evidence that we discussed in our brief that he was motivated by financial considerations. That is where I was going to get to. What is the strong evidence? The strong evidence, there's a number of pieces. First, P.A. Casella explicitly told Janet Zane the first time they met that humeric was not going to be approved because it was $1,000 a bottle. Because she was making a statement of her own. True, but she was well aware of the NPCH's prescribing practices. But more importantly, Dr. G. was well aware that humeric was quite expensive. Is that in the record? Oh, absolutely. He testified that one of his job responsibilities was to control pharmaceutical costs. He worked for a for-profit company. He knew it was important to his employer to control pharmaceutical costs. He attended monthly meetings where a corporate representative would give a fly show of pharmaceutical costs and usage, including the usage of humeric. So he was well aware that this was an expensive drug, and I think a jury could absolutely infer that this affected his decision-making. Thank you. Thank you. Mr. Wiggins, good afternoon. Good afternoon. I don't believe there's any error by the district court. This case remains without sufficient evidence from which a trier of fact could conclude. This is a summary judgment, right? Correct. Isn't there conflicting evidence here as to the medical part? No. I think it's important to keep in context what Dr. Gubaluski's role was. He's not the primary care, and there's no issue as to the primary care that this woman received. It's the decision on the non-formulary request that comes up in July, and he gets the form, he applies it to the protocol, and his determination was, based on what the information he was given, that she hadn't failed two topical treatments. Dr. Melora, I believe his name is, his testimony is that there was, quote, Yes, that's the plaintiff's expert, and as you saw from the record, there's a defense expert. Yes, that's the whole point that I'm trying to get to. There's conflicting evidence here. Conflicting evidence as to whether there was a compliance with the standard of care. There's no conflicting evidence as to whether Dr. Gubaluski harbored the culpable state of mind that's required for an Eighth Amendment violation. What would it be here? So you're the top person, and they come to you, and they say, here's a person who had Humira, and she's been getting a stronger topical cream, and it's not working. And then I say, give her the weaker stuff. And I've got an expert saying, no one in the world could think the weaker stuff would treat it. Why could the jury conclude that he just gave no concern to the patient? Well, because I think you have to, all that I think is fair game for a negligence claim, but I don't think it goes that, to establish an inference. Negligence would be, I mistakenly thought the weaker stuff would work. But why don't you just deliver the inferences, I don't care if it would work or not. Give her the weaker stuff. Okay. Because, well, first of all, nothing in the information he got in the formulary request indicated that she had failed to. Let's start with that. Is that right? Yes. There's nothing in that formulary, in the request, that she failed to. She was on the cobetasol. But there was nothing to indicate that she was on both. He looks at it and decides, let me try both. Even though it's a lesser claim, and as Judge Burroughs found below. Could a jury possibly conclude that he was not saying, let's try both? No. Is that necessary? In other words, is it necessary for you to think that a jury could not conclude that he was saying, don't relax your boss? I think the only fair reading of his decision, and based on the formulary request and the protocol, was that the treatment decision was cobetasol plus Dovenix. I don't think there's any other way. So the question becomes, for deliberate indifference in Eighth Amendment, did he harbor the comfortable state of mind to say he knew that was going to fail, and yet he gave it anyway? And that's the big distinction here in this case, and it's a demarcation that we have to maintain. I guess his contention is that the expert testimony about the unlikeliness of Dovenix doing anything in this circumstance suffices to provide the basis for a jury to conclude that he would have known that doing the two together couldn't possibly work. I don't think he can do that. I think that gets into this label game. You have an expert talking about, if you really read Dr. Morolla's opinion, it's really saying he didn't comply with his standard of care. To throw in sort of quips like, well, that's tantamount to no care, you could say that any time you provide treatment, it doesn't work. In this case, in this court's decision in Roulez v. Rowland, where there was an expert on behalf of the plaintiff, this court still entered summary judgment on the deliberate indifference claim. In that case, there was a claim that the antibiotics that were prescribed by the defendant doctor was totally inadequate to the sepsis that was going on. Government put forward any evidence to indicate that the two together could work? If a jury wanted to find that the two together could work, is there any basis in the record for a jury to base that on? There's a testimony from Dr. Wigaluski that, going to Judge Thompson's question earlier, that in a prison confinement, if you're trying medications, because you're under a more controlled environment, there's no risk of alcohol or tobacco use, you might get more efficacious treatment. Plus, you're able to monitor it more. And that was a bit of his decision-making, as he testified to in his deposition. Dr. Gard, the evidence expert, to answer your question, Judge Barron, testified that Dovonex was appropriate in a thin-skinned area, such as the groin, which is where the area was acting up the most. Even for a person for whom Flutasol is not working? It didn't go beyond that, but he had the whole record. What's the basis on which a jury can conclude that? The story that you're suggesting, the record suggests, which is that the reason he prescribed the Dovonex was because he actually thought that that would provide an improvement when used with the Flutasol. Is there anything that indicates that one could actually believe that? Any medical testimony of any kind suggesting that is true? I think just behalf of Dr. Gard's opinion, that when he reviews it, he finds there was no violation of the standard of care, that it was reasonable to try these two medications together in this confined environment to see whether or not they would work. Who's Dr. Gard? Dr. Gard, the defense expert. He said the treatment was consistent with good and accepted practice, which totally contradicted what Dr. Merola said, which said no medical justification for denying Humira without prescribing an alternative, a crude cause of treatment or gathering additional patient history. According to Dr. Merola, prescribing Dovonex was a functional equivalent of providing no treatment at all and caused Zing to suffer needlessly. Yes, and I still say that for him to say that that's tantamount to no treatment at all, he's disagreeing with the treatment. And when you have disagreements over a treatment, it's not the same to infer a culpable wanton disregard state of mind. If, in fact, no treatment had been provided, would that meet the standard we're talking about here? I think you're inching closer, yes. Inching closer? Okay. Well, what would cause a foot to go? Again, I think a fair reading of this record was that there's no suggestion this was an effort. There was testimony from Ms. Casella, the primary care physician, that she talked with Dr. Grebuluski after that decision. He said to, don't reach out to the dermatologist if you need to. Monitor it closely. Within two weeks, when it wasn't getting corrected, an appointment was made. She was admitted. There's testimony that Dr. Grebuluski facilitated that when the first appointment was canceled and she got the Humira. And as to the cost reference, the record does not support any inference that this decision was motivated only by cost. Obviously, as medical director and as all of our health care, you have to consider cost in some general sense. But that didn't motivate his decision here. He doesn't have a financial stake. He's not involved in budgeting. In fact, the evidence was that 70 prescriptions of Humira were made during 2013 alone, all approved by Dr. Grebuluski. Six in the month of July, the same month as of this. The reliance on the statement of Ms. Casella, which was at the initial visit, was even before MPCH assumed the contract in July. It certainly has nothing to do or you can't really attribute that to Dr. Grebuluski. So I think, again, this case marks the distinction between what is a viable negligence case and what is a deliberate indifference case. And I would respectfully request that the lower court decision be affirmed. Thank you. Thank you. Thank you.